**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**TEXARKANA DIVISION**

| | |
|---|---|
| **WILLIAM KELLER, DEBRA KELLER**, and **PEGGY BYRGE**, individually and on behalf of all others similarly situated, | ) ) ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )          **No. 4:14-cv-04002-SOH** |
| | ) |
| **FCOA, LLC** **d/b/a FOREMOST INSURANCE COMPANY,** | ) ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS**
**<u>REPRESENTATIVES AND APPOINTMENT OF CLASS COUNSEL</u>**

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT .................................................................1

II.    STATEMENT OF FACTS......................................................................2

    A.    General Loss Settlement Terms...................................................2

    B.    The Loss Settlement Provisions in all of Foremost's Homeowners'
        Insurance Politics in Arkansas are Substantially Similar...................3

    C.    Foremost's Regular Practice during the Class Period was to
        Depreciate Labor on Arkansas Homeowners' Claims .....................5

    D.    Foremost Ceased Depreciating Labor in Arkansas as of October 1, 2013.......9

    E.    Foremost Wrongfully Depreciated Labor Costs When Calculating the
        ACV Of The Proposed Class Representatives' Property Losses.....................11

        1.    Plaintiff Byrge's Claim ..................................................11

        2.    Plaintiff Keller's Claim .................................................13

    F.    Foremost Routinely Depreciated Labor on Claims Made Under
        all Policy Forms.......................................................16

    G.    Foremost is Able to Calculate the Number of Claims on which it
        Withheld Labor Depreciation, and the Amount Withheld ...........................17

III.    PLAINTIFFS' CLAIMS........................................................19

IV.    THE PROPOSED CLASS DEFINITION ...........................................20

V.    ARGUMENT...................................................................21

    A.    Legal Standards ..................................................21

    B.    Membership In The Class Is Ascertainable ...................................22

    C.    The Class Satisfies The Requirements of Rule 23(a) ........................25

        1.    Numerosity Is Established...........................................25

        2.    Commonality Is Established .........................................25

        3.    Typicality Is Established .............................................30

i

        4.      Adequacy Is Established.................................................................33

   D.     The Class Satisfies The Requirement of Rule 23(b)(3)......................................34

        1.      Common Issues Predominate.....................................................34

        2.      Superiority Is Established ..........................................................40

VI.   CONCLUSION ......................................................................................41

## TABLE OF AUTHORITIES

**Cases**

*Adams v. Cameron Mut. Ins. Co.*, 2013 Ark. 475, 430 S.W.3d 675 (2013), reh'g denied (Jan. 9, 2014), ............................................................................... 1, 2, 5, 8, 9, 12, 13, 14, 15, 16, 17

*Alpern v. UtiliCorp United*, 84 F.3d 1525 (8th Cir. 1996) ........................................................ 30

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................................ 33

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013) .................... 21, 34

*Arloe Designs, LLC v. Arkansas Cap. Corp.,* 2014 Ark. 21 (Jan. 23, 2014) ........................ 36, 38

*Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023 (8th Cir. 2010) ................................................ 34

*Bussey v. Macon Cty. Greyhound Park, Inc.*, 2014 WL 1302658 (11th Cir. Apr. 2, 2014) ......... 37

*Butler v. Sears, Roebuck and Co.*, 727 F.3d 796 (7th Cir. 2013) ................................................ 37

*Bynum v. District of Columbia*, 214 F.R.D. 27 (D.D.C. 2003) .................................................... 22

*Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269 (8th Cir. 1990) ........................................................ 30

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013) ................................ 35, 36

*Day v. Celadon Trucking Servs.,* 2014 U.S. Dist. LEXIS 81496 (E.D. Ark. Jun. 16, 2014) ........ 37

*DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171 (8th Cir. 1995) .................................................. 26

*Eastwood v. Southern Farm Bureau Cas. Ins. Co.*, 291 F.R.D. 273 (W.D. Ark. 2013) ................................................................................................................ 22, 23, 34, 40

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974) ......... 21, 28

*Ewert v. eBay, Inc.*, 2010 WL 4269259 (N.D. Cal. 2010) .......................................................... 26

*Farmers Union Mut. Ins. Co. v. Robertson*, 2010 Ark. 241, 370 S.W.3d 179 (2010) ............ 35, 41

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982) .... 33

*Ginardi v. Frontier Gas Servs., LLC*, No. 4:11-cv-00420-BRW, 2012 WL 1377052 (E.D. Ark. Apr. 19, 2012) ...................................................................................................... 21, 35

*Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773 (8th Cir. 2013) ................................................ 34

*Haney v. Recall Ctr.*, 282 F.R.D. 436 (W.D. Ark. 2012) ............................................................. 22

*In re BP p.l.c. Sec. Litig.*, 2014 WL 2112823 (S.D. Tex. May 20, 2014) ..................................... 39

*In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) ............................................................. 37

*In re Linerboard Antitrust Litig.*, 203 F.R.D. 197(E.D. Pa. 2001) ............................................... 32

*In re ML-Lee Acquisition Fund II, L.P. & ML-Lee Acquisition Fund (Ret. Accounts) II, L.P. Sec. Litig.*, 848 F. Supp. 527 (D. Del. 1994) ..................................................................................... 32

*In re Nexium Antitrust Litig.*, No. 14-1 1521, 2015 WL 265548 (1st Cir. Jan. 21, 2015) ........... 36

*In re Select Comfort Corp. Sec. Litig.*, 202 F.R.D. 598 (D. Minn. 2001) ..................................... 33

*In re Urethane Antitrust Litig.*, 768 F.3d 1245 (10th Cir. 2014) .................................................. 36

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013) 37

*Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161 (9th Cir. 2014) ........................................................ 37

*Leyva v. Medline Industries Inc.*, 716 F.3d 510 (9th Cir. 2013) ............................................. 36, 37

*Lindell v. Synthes USA*, 2014 WL 841738 (E.D. Cal. Mar. 4, 2014) ........................................... 36

*Lindquist v. Farmers Ins. Co.*, No. CV 06-597-TUC-FRZ, 2008 WL 343299 (D. Ariz. Feb. 6, 2008) ................................................................................................................................... 23

*McDonough v. Toys R Us, Inc.*, 638 F. Supp. 2d 461 (E.D. Pa. 2009) ......................................... 32

*Miller's Mut. Ins. Co. v. Smith Co.*, 284 Ark. 124, 680 S.W.2d 102 (1984) ........................... 20, 21

*Nelson v. Wal-Mart Stores, Inc.*, 245 F.R.D. 358 (E.D. Ark. 2001) .................................. 31, 33, 34

*Paxton v. Union Nat. Bank*, 688 F.2d 552 (8th Cir. 1982) ............................................... 25, 26, 30

*Perrin v. Papa John's Int'l, Inc.*, No. 4:09CV01335 AGF, 2013 WL 6885334 (E.D. Mo. Dec. 31, 2013) ................................................................................................................................... 29

*Roach v. T.L. Cannon Corp.*, 778 F.3d 401 (2d Cir. Feb. 10, 2015) ............................................ 36

*Robinson v. Sears, Roebuck and Co.*, 111 F. Supp. 2d 1101 (E.D. Ark. 2000) ............................ 26

iv

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) ...................... 29

*Silvey Cos. v. Riley*, 318 Ark. 788, 888 S.W.2d 636 (1994) ......................................................... 20

*Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32 (1st Cir. 2003).................................... 34, 35

*Sykes v. Mel S. Harris & Assocs., LLC,* 2015 U.S. App. LEXIS 2057 (2d Cir. Feb. 10, 2015)... 36

*Torres v. Gristede's Operating Corp.*, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006) ............... 40

*Walls v. Sagamore Ins. Co.*, 274 F.R.D. 243 (W.D. Ark. 2011)........................... 21, 23, 24, 26, 31

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ......................................................... 26, 29

**Statutes**

Section 23-79-208 of the Arkansas Code ........................................................ 19, 20, 24, 29, 31, 38

**Rules**

Federal Rule of Civil Procedure 23 ........................................................ 2, 21, 25, 26, 32

Rule 23(a)...................................................................................................................... 21, 25

Rule 23(a)(1) ....................................................................................................................... 25

Rule 23(a)(2) ................................................................................................................. 25, 26

Rule 23(a)(3) ....................................................................................................................... 30

Rule 23(a)(4) ....................................................................................................................... 33

Rule 23(b) ........................................................................................................................... 21

Rule 23(b)(3)......................................................................................... 21, 34, 36, 37, 40

Fed. R. Civ. P. 23(c)(1)(C) ................................................................................................33

Plaintiffs and Proposed Class Representatives William Keller, Debra Keller, and Peggy Byrge hereby submit this memorandum of law in support of their motion to (i) certify the Class, as defined herein; (ii) appoint the Proposed Class Representatives as class representatives; and (iii) appoint the law firms of Kessler Topaz Meltzer & Check LLP; Keil & Goodson, P.A.; Mattingly & Roselius, PLLC; Murphy, Thompson, Arnold, Skinner & Castleberry; Crowley Norman LLP; and Taylor Law Partners (collectively "Class Counsel") as counsel for the Class.

## I.    PRELIMINARY STATEMENT

This statewide class action arises out of Foremost Insurance Company Grand Rapids, Michigan's ("Foremost") admitted-to practice of depreciating labor costs on Arkansas homeowner's insurance policies during the Class Period.  This case is tailor-made for class certification, as Plaintiffs and the Class have alleged a common harm due to this systematic practice which Foremost engaged in for years.  Indeed, Foremost's Corporate Representatives testified that Foremost applied depreciation to labor costs in adjusting homeowner's claims made in Arkansas, and that Foremost depreciated labor costs *as a matter of practice* from November 2003 up until October 1, 2013.  Foremost ended this statewide practice by issuing a company-wide directive that applied to all policy forms in the state.

The central issue in this action—whether Foremost breached the terms of its homeowner's insurance contracts in Arkansas by depreciating labor costs—is readily susceptible to classwide determination.  Indeed, determining whether Foremost is liable to Class members requires little more than applying the Supreme Court of Arkansas' ruling in *Adams v. Cameron Mutual Insurance Co.* that "the costs of labor may not be depreciated" to the form insurance contracts utilized by Foremost during the Class Period.  2013 Ark. 475, at *7, 430 S.W.3d 675, 679 (Ark. 2013).  Further, each and every Class member's damages can be calculated by applying a single damages formula to claims data that, by Foremost's own admission, exists

1

within its electronic data system or within the data of its vendors, and is readily accessible by the company.  Moreover, Plaintiffs, each of whom had depreciated labor costs withheld from their insurance payments at the time of their property losses, are typical of the Class and adequate to serve as Class representatives.

Plainly, a class action is the superior and most efficient means of adjudicating this controversy which affects all Foremost homeowner's policyholders in Arkansas during the Class Period.  Because Plaintiff and the putative Class members pursue claims based on a common legal theory, common policy terms and common proof, the prerequisites for certification under Federal Rule of Civil Procedure 23 are met.

## II.     STATEMENT OF FACTS

### A.     General Loss Settlement Terms



Deposition of Michael Oei,[1] April 7, 2015, attached as **Ex. 63** (hereafter "Oei Depo."), at 37:2-6; **Ex. 41** at bates -135.

**Ex. 41** at bates -134.                                                                   *Id.*; Oei Depo., **Ex. 63**, at 37:7-11.

Oei Depo., **Ex. 63,** at 37:14-38:22.  There is no dispute herein that materials can be legally depreciated in arriving at the

---

[1] Michael Oei, a learning delivery consultant employee of Farmers Insurance Exchange who works in the "University of Farmers" (Oei Depo., **Ex. 63**, at 7:13-16, 9:10-13), appeared at deposition as a Rule 30(b)(6) corporate representative on behalf of Foremost on April 7, 2015. Deposition Notice attached as **Ex. 55**.  Mr. Oei has provided training regarding the claims estimating software Xactimate and Symbility.  Oei Depo., **Ex. 63**, at 14:15-19, 34:5-8.

ACV.  Rather, at issue in this case is whether Foremost should have depreciated *labor* costs in arriving at the ACV; or, stated another way, whether Foremost should have excluded *labor* as a depreciable item in calculating the ACV.

### B. The Loss Settlement Provisions in all of Foremost's Homeowners' Insurance Policies in Arkansas are Substantially Similar

A Foremost homeowner's insurance policy is comprised of multiple sections, titled generally: (1) Insuring Agreement; (2) Definitions; (3) Your Property Coverages; (4) Insured Perils; (5) Exclusion; (6) Our Payment Methods; (7) Deductible; (8) Your Liability Coverages; (9) Your Additional Coverages; (10) General Conditions; (11) Exclusions; and (12) Policy Conditions.  *See* **Ex. 45**, Form 3825 03/97, at Frmst_Keller001006-26; **Ex. 46**, Form 4075 01/07, at Frmst_Keller000973-97; **Ex. 47**, Form 11000 03/06, at Frmst_Keller001904-25; **Ex. 48**, Form 11001 03/06, at Frmst_Keller001926-44; **Ex. 49**, Form 11004 03/06, at Frmst_Keller001991-2009; **Ex. 50**, Form 5275 5/99, at Frmst_Keller001602-26; **Ex. 51**, Form 35000 09/99, at Frmst_Keller002034-55; **Ex. 52**, Form 11003 03/06, at Frmst_Keller001969-90; **Ex. 53**, Form 11002 03/06, at Frmst_Keller001945-68.

The claims at issue here primarily concern the definition of "actual cash value" and the use of that definition in the "Our Payment Methods - Partial Loss Payment Method" section of the policies. Two basic definitions of "actual cash value" are used in the policies.  One version, utilized in Plaintiff Byrge's policy, states:

> **Actual cash value** means the cost to repair or replace property with new materials of like kind and quality, less allowance for physical deterioration and depreciation, including obsolescence. (exemplar at **Ex. 45**, Frmst_Keller 001009; Byrge Policy at **Ex. 9**)

A slight variation of the above-definition states:

3

> **Actual cash value** means the cost to repair or replace property with conventional materials of like kind and quality, less allowance for physical deterioration and depreciation, including obsolescence. (*e.g.,* **Ex. 50**, Frmst_Keller 01605)

and another slight variation of the above-definition states:

> **Actual cash value** means the amount it would cost to repair or replace insured property with materials available today of like kind and quality, less allowance for physical deterioration and depreciation, including obsolescence. (*e.g.,* **Ex. 47**, Frmst_Keller 01907)

The second definition, utilized in Plaintiff Kellers' policy, states:

> **Actual cash value** means the amount it would cost to repair or replace insured property with materials available today of like kind and quality, less adjustment for physical deterioration and depreciation, including obsolescence. Our adjustment for physical deterioration, depreciation and obsolescence applies to all costs including the cost of labor and material. (exemplar at **Ex. 46**, Frmst_Keller 00976; Keller Policy at **Ex. 2**)

Subject to a few minor exceptions, *all forms* of Foremost's policies stated that, in the event of a partial loss, at the time of a covered loss, policyholders were entitled to recover the "actual cash value" (ACV) of their loss (net of any deductible) from Foremost. *See, e.g.,* **Ex. 45**, Frmst_Keller 01017 (Foremost will pay "[t]he **actual cash value** of the damaged part of your dwelling at the time of the loss"); **Ex. 46**, Frmst_Keller 00986 (Foremost will pay "[t]he **actual cash value** of the damaged portion of your dwelling at the time of the loss"); **Ex. 47**, Frmst_Keller 01915 (Foremost will pay "[t]he **actual cash value** of the damaged part of the dwelling at the time of the loss").



Oei Depo., **Ex. 63**, at 129:17-130:6.

*Id*. at 127:23-128:2.

██████████████████████████████████████████████████████████

████████████████████████ *Id.* at 128:3-7. ████████████████████████

██████████████████████████████████████████████████████████

████████   *Id.*   Thus, pursuant to the terms of Foremost's insurance policies, ACV and RCV policyholders who did not repair their damaged property were prohibited from recovering any of the depreciation that was deducted from their ACV payments.

Throughout the Class Period, Foremost settled structural claims under its RCV and ACV policies in accordance with the above-described terms.  For both its RCV and ACV policies, Foremost's general practice was to initially pay RCV and ACV policyholders for only the ACV of their covered losses; unless the damage was $2500 or less, only RCV policyholders who completed repairs to their damaged property were eligible to recover the depreciation holdback through an RCV payment.  *See, e.g.,* **Ex. 50**, Frmst_Keller 01616 ("If the replacement cost of the damaged property is more than $2,500, we will not pay the total cost of repair or replacement until actual repair or replacement is completed....If you elect not to repair or replace the dwelling on the same premises as shown on the Declarations Page, the Actual Cash Value Payment Method will apply.").  Thus, as a matter of practice, Foremost policyholders (both ACV and RCV policyholders) who did not repair or replace their damaged property could not recover the depreciation holdback and were limited to just ACV payment.  *Id.*

    **C.**    **Foremost's Regular Practice during the Class Period was to Depreciate Labor on Arkansas Homeowners' Claims**

As evidenced by documents and testimony, ████████████████████████

██████████████████████████████████████████████████████████

5

Deposition of Colin Cheesman,[2] March 3, 2015, attached as **Ex. 62** (hereafter "Cheesman Depo."), at 51:24-52:4; 52:16-20; 54:6-12. ███████████████████████

███ *Id.* at 102:1-19.

For example, the Depreciation Guidelines (Oct. 2009) stated that ███████████

███████████████████████████████████████████████████



**Ex. 42**. In response to the question of whether both materials and labor could be depreciated, a Farmers email circulated in May 2009 similarly stated that ████████████ ████████

████████████ **Ex. 21**. When there appeared to be some additional confusion on this point later on in August 2009 (**Ex. 22** at bates -31263: ███████████████████████

██████, a bulletin shortly followed that stated:

**Ex. 23**, dated Sept. 2, 2009 (emphasis added). The depreciation of labor continued to be affirmed as company practice for years; in 2013, the Central Zone Chronicle (a Farmers newsletter) stated that for the AROK (Arkansas/Oklahoma) ████████████████████

██████████████████ **Ex. 24**. Collin Cheesman, Foremost's Corporate Representative in

---

[2] Collin Cheesman, a claims representative employee of Farmers Insurance Exchange (Cheesman Depo. at 7:22-8:1), appeared at deposition as a Rule 30(b)(6) corporate representative on behalf of Foremost on March 3, 2015. Deposition Notice attached as **Ex. 54**. Mr. Cheesman adjusted claims for Foremost, Farmers Insurance Exchange, and Farmers Insurance Company, Inc. (Cheesman Depo. at 10:15-24).

this matter, ███████████████████████████████████████████

████████████████████████████ **Ex. 25**.

During the time period of November 2003 through October 1, 2013 when Foremost was depreciating labor in Arkansas, ████████████████████████████████████

███████████████████████████ **Ex. 61**, Deposition of Hans Bloem, Farmers Insurance Exchange employee, taken February 27, 2015 (hereafter "Bloem Depo."), at 22:20-23:8. ████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████ Oei Depo., **Ex. 63**, at 27:2-24.

Both estimating programs provided the adjustors the option to ███████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

Cheesman Depo., 36:14-16, 39:11-17, 44:5-46:3, 113:11-114:4. ████████████████

████████████████████████████████████████████████████████████

*Id.* at 37:2-5.

Through Xactimate and Symbility, Foremost utilized a common method for calculating labor depreciation during the Class Period.  Examples of the estimates prepared using Xactimate are attached as **Ex. 7** and **Ex. 14**, and example of an estimate prepared using Symbility is attached at **Ex. 43**. ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████ Oei Depo., **Ex. 63**, at 41:11-14, 34:9-36:22, 37:2-38:22, 42:19-47:7 (discussing **Ex. 57**, which is an example estimate created for training purposes using Symbility).   Specifically, to determine RCV of each particular line item in a policyholder's estimate, ████████

████████████████████████████████████████████████████████

*Id.* ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████ **Ex. 56**; Oei Depo., **Ex. 63**, at 57:16-59:5. ████

████████████████████████████████████████████ *Id.*

When the "unit price" contained a component of labor, ████████████████

████████████████████████████████████



Oei Depo., **Ex. 63**, at 1180:5-10, 181:2-5, 181:9-17; see also **Ex. 26** (Farmers email, July 16, 2013, ██████████████████████████████████████

███████████████████



**Ex. 58**.

*Id.*

### D.   Foremost Ceased Depreciating Labor in Arkansas as of October 1, 2013

On July 5, 2013, the Arkansas Insurance Department issued Bulletin 13-2013, stating that "[l]abor of any kind related to the repair, rebuild, or replacement of covered property cannot be depreciated," and further noted that this "is ***not*** a new Department position."

*See, e.g.,* **Ex. 27**

; **Ex. 28**

; **Ex. 29**

**Ex. 30**                                                        **Ex. 31**

**Ex. 32**

After much consideration, a September 16, 2013 company-wide email from Randy Wilden, Special General Claims Adjuster, stated:



**Ex. 34**; **Ex. 35**.[3]   This  was  viewed  by  Foremost  as ██████████████████████

██████████ **Ex. 34**; Cheesman Depo. at 28:5-29:1.

Accordingly, ████████████████████████████████████

█████████████████ Cheesman Depo. at 28:18-29:1; 51:16-23; 52:5-9.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████ **Ex. 33** █████████████████████

████████████████████ ; **Ex. 38**. █████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████ **Ex. 44**;

Cheesman Depo. at 45:5-46:8; *cf.* **Ex. 59** ███████████████████

███████████████████████████████████████

███████████████████████████████████

Cheesman  Depo.  at 22:6-11; 25:15-20 ██████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████

---

[3] ███████████████████████████████████████████████ **Ex. 36**, **Ex. 37**, **Ex. 39**, **Ex. 40**.

### E.   Foremost Wrongfully Depreciated Labor Costs When Calculating The ACV Of The Proposed Class Representatives' Property Losses

#### 1.   Plaintiff Byrge's Claim

Like other members of the putative class, Plaintiff Byrge contracted with Foremost for a homeowner's insurance policy to cover property losses.  *See* **Ex. 10** (declaration page); **Ex. 9** (policy).  Plaintiffs Byrge's policy provided ACV coverage.  **Ex. 9** at 9.

After suffering a covered loss on her home and an adjacent structure due to a hail storm on April 4, 2008, Plaintiff Byrge made a timely claim for payment to Foremost.  *See* **Ex. 1**, Complaint (filed at ECF 1-1; hereafter "Complaint"); **Ex. 64**, Proposed First Amended Complaint (filed at ECF 45-1; hereafter "Proposed FAC"); **Ex. 11**; **Ex. 12**.  On April 7, 2008 the assigned adjuster, Robert Goodson, wrote a letter to Plaintiff Byrge to advise that the claim had been received and that he would be contacting her to work through the claims process.  **Ex. 13**.  The loss was estimated and adjusted at a time when depreciation would have been applied to labor.  Cheesman Depo. at 88:23-89:13.  Foremost's estimate for Plaintiff Byrge's Claim No. 8074396 (attached as **Ex. 14**) was prepared using Xactimate.  Cheesman Depo. at 113:13-14.

Foremost's adjuster determined that the total RCV of Byrge's covered loss was $2,145.92 ($1,585.01 for the mobile home, **Ex. 14** at Frmst_Keller 00104, and $560.91 for an adjacent structure, Ex. 14 at Frmst_Keller 00105).  **Ex. 14** at bates -104 and -105.

In calculating the ACV payment due, Foremost deducted $643.56 in depreciation ($446.10 on the mobile home, and $197.56 on the adjacent structure).  **Ex. 14** at bates -104 and -105.  Of the total depreciation, ███████████████████████████████████████

███████████   Cheesman Depo. at 116:16-117:4.

Consistent with Foremost's practice, depreciation attributable to materials and labor costs were not separately broken out for each line item of Plaintiff Byrge's estimate.  Rather, the RCV

11

of each line item was calculated by multiplying the "quantity" of the line item by a single "unit cost," which was provided by Xactimate and included the cost of labor.  For example:

- to arrive at the $819.46 RCV of the line for "3 tab - 20 yr.- composition shingle roofing - incl. felt" in Plaintiff Byrge's estimate, Foremost multiplied the total quantity (9.01 squares) by an Xactimate-generated unit cost of $90.95.  **Ex. 14** at bates -102.  The Xactimate software then calculated depreciation at $327.78.  *Id.*  After deducting depreciation from the RCV, the resulting ACV was $491.68.  *Id.*  ██████████

  ████████████████████████████████████████████████████

  ████████████████████████████████████████████████████

  ████   Cheesman Depo. at 114:15-115:9.

- to arrive at the $166.95 RCV of the line for "Ridge cap - composition shingles" in Plaintiff Byrge's estimate, Foremost multiplied the total quantity (63 linear feet) by an Xactimate-generated unit cost of $2.65.  **Ex. 14** at bates -102.  The Xactimate software then calculated depreciation at $66.78.  *Id.*  After deducting depreciation from the RCV, the resulting ACV was $100.17.  *Id.*  ████████████████████

  ████████████████████████████████████████████████████

  ████████████████████████████████████   Cheesman Depo. at 115:10-17.

- to arrive at the $104.40 RCV of the line for "R&R [remove and replace] Drip edge" in Plaintiff Byrge's estimate, Foremost multiplied the total quantity (87 linear feet) by an Xactimate-generated unit cost of $1.20.  **Ex. 14** at bates -102.  The Xactimate software then calculated depreciation at $36.54.  *Id.*  After deducting depreciation from the RCV, the resulting ACV was $67.86.  *Id.*  ████████████████████

███████████████████████████████████████████

████████████████████████████████████   Cheesman Depo. at 115:19-22.

After deducting depreciation and the $500 deductible, on April 12, 2008 Foremost made payment to Plaintiff Byrge in the amount of $1,002.36 ($638.91 for her mobile home, and $363.45 for her adjacent structure).  **Ex. 11** at bates -92.  Foremost deducted depreciation of $446.10 on the mobile home, and $197.56 on the adjacent structure in arriving at the ACV payment of $1,002.36.  *Id.*  As Plaintiff Byrge had an ACV policy, she has not recovered any of the withheld labor depreciation. **Ex. 67** (Byrge Decl., stating she meets class definition and none of the exclusions apply); *see also* **Exs. 9**, **10**, **11**, **12**, and **14**.

2.      **Plaintiff Keller's Claim**

Plaintiffs William and Debra Keller contracted with Foremost for a homeowner's insurance policy to cover property losses.  *See* **Ex. 3** (declaration page); **Ex. 2** (policy).  The Keller's policy provided ACV coverage.  **Ex. 2** at 11.

After suffering a covered loss on their home due to a hail storm on March 10, 2010, the Kellers made a timely claim for payment to Foremost.  *See* Complaint; PFAC; **Ex. 4**; **Ex. 5**.  On March 19, 2010 the assigned adjuster, Justin Karasinski, wrote a letter to the Kellers to advise that the claim had been received and that he would be contacting them to work through the claims process.  **Ex. 6**.  The Keller's loss was estimated and adjusted at a time when depreciation would have been applied to labor.  Cheesman Depo. at 75:13-18.  Foremost's estimate for Plaintiff Kellers' Claim No. 8074396 (attached as **Ex. 7**) was prepared using Xactimate. Cheesman Depo. at 72:18-73:12.

Foremost's adjuster determined that the total RCV of the Kellers' covered loss was $5,120.21.  **Ex. 7** at bates -17; Cheesman at 71:5-15.

In calculating the ACV payment due, Foremost deducted $401.97 in depreciation "based on the roof being 2 years old." *Id.* While he could not tell the exact allocation of the $401.97 between labor and materials in looking at **Ex. 7**, ███████████████████████████████

███████████████████████████████████ Cheesman Depo. at 71:25-72:8, 73:25-74:7.

Consistent with Foremost's practice, depreciation attributable to materials and labor costs were not separately broken out for each line item of the Kellers' estimate. Rather, the RCV of each line item was calculated by multiplying the "quantity" of the line item by a single "unit cost," which was provided by Xactimate and included the cost of labor. For example:

- to arrive at the $272.83 RCV of the line for " Drip edge" in the Kellers' estimate, Foremost multiplied the total quantity (174.89 linear feet) by an Xactimate-generated unit cost of $1.56. **Ex. 7** at bates -21. The Xactimate software then calculated depreciation of 5.71% (2/35 years), or $15.59. *Id.* After deducting depreciation from the RCV, the resulting ACV was $257.24. *Id.* ███████████████████████████

  ███████████████████████████████████████████

  ███████████████ Cheesman Depo. at 74:11-17.

- to arrive at the $2,802.32 RCV of the line for "3 tab - 20 yr.- composition shingle roofing - incl. felt" in the Kellers' estimate, Foremost multiplied the total quantity (20.66 squares) by an Xactimate-generated unit cost of $135.64. **Ex. 7** at bates -21. The Xactimate software then calculated depreciation at 10% (2/20 years), or $280.23. *Id.* After deducting depreciation from the RCV, the resulting ACV was $2,522.09. *Id.* ███

  ███████████████████████████████████████████



█████████████████████████   Cheesman Depo. at 74:18-75:2, 80:17-82:2

- to arrive at the $273.12 RCV of the line for "R&R Shutter - simulated wood (polystyrene)" in the Kellers' estimate, Foremost multiplied the total quantity (4 each) by an Xactimate-generated unit cost of $68.28. **Ex. 7** at bates -23. The Xactimate software then calculated depreciation at 33.33% (10/30 years), or $86.73. *Id.* After deducting depreciation from the RCV, the resulting ACV was $186.39. *Id.* ████████████



██████████████████████████   Cheesman Depo. at 75:8:12, 75:24:75:1.

After deducting depreciation and the $500 deductible, on March 23, 2010 Foremost made payment to the Kellers in the amount of $4,218.24. **Ex. 8**. Foremost deducted depreciation of $401.97. *Id.* On Keller's 2010 claim, ██████████████████████ ████████████████   Cheesman Depo. at 76:14-77:5; 78:18-79:3.



Cheesman Depo. at 83:18-84:8.

As the Kellers had an ACV policy, they have not recovered any of the withheld labor depreciation. **Exs. 68** and **69** (Kellers Decls., stating they meet the class definition and none of the exclusions apply); *see also* **Exs. 2**, **3**, **4**, **5**, **7**, and **8**.

### F. Foremost Routinely Depreciated Labor on Claims Made Under all Policy Forms

The Supreme Court of Arkansas held in *Adams v. Cameron Mutual Insurance Co.* that "the costs of labor may ***not*** be depreciated when determining the actual cash value of a covered loss under an indemnity insurance policy that does not define the term 'actual cash value.'" 2013 Ark. 475, at 7, -- S.W.3d -- (Nov. 21, 2013).  Foremost's policies during the Class Period defined "actual cash value" as replacement cost minus depreciation, the same definition found in *Black's Law Dictionary* and which the *Adams* Court adopted and held, as a matter of interpretation, did not allow for depreciation of labor.

Although there is a variance in the policy language between the Byrge Policy (**Ex. 9**) and the Keller Policy (**Ex. 2**),



Cheesman Depo. at 89:14-90:9.

Cheesman Depo. at 90:19-91:1.  In Foremost's estimation, none of its policy forms (attached as **Exs. 45** to **53**)

Cheesman Depo. at 93:19-94:1; 102:14-103:6.

...

16



Cheesman Depo. at 93:3-19 (objections omitted).   While Foremost will certainly attempt to distinguish that the Keller policy language is distinguishable from the language at issue in *Adams v. Cameron*, in practice Foremost made no distinction between the policy forms in regard to how it handled labor depreciation in the adjustment of claims.

### G.   Foremost is Able to Calculate the Number of Claims on which it Withheld Labor Depreciation, and the Amount Withheld

The amount of labor depreciation calculated and withheld during the Class Period is calculable, ***and the information has already been retrieved by Foremost***.   In connection with its removal papers, Foremost filed two affidavits detailing its estimation of the amount of labor depreciation.   **Ex. 15** (Affidavit of Williams, originally submitted by Foremost as Exhibit C to its removal, filed at ECF 1-3); **Ex. 16** (Affidavit of Bloem, originally submitted by Foremost as Exhibit B to its removal, filed at ECF 1-2).   The underlying support for those affidavits was two spreadsheets, one obtained by Foremost from Symbility, and one obtained from Xactimate.   The spreadsheets have been produced in this litigation as Frmst_Keller 31415 (Symbility Data Set) and Frmst_Keller 31416 (Xactimate Data Set).   Each spreadsheet details ███████████ ██████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████   Exemplar pages of the voluminous spreadsheets are attached as **Ex. 17** (Symbility) and **Ex. 18** (Xactimate).[4] The Xactimate data for the Keller claim is attached as **Ex. 19**, and for the Byrge claim is attached as **Ex. 20**.

---

[4] Should the Court be interested in reviewing the entirety of the electronic spreadsheets, upon request the Plaintiffs will tender those to the Court for *in camera* inspection.

The spreadsheets unequivocally demonstrate that the RCV figures contained in Foremost's estimates ██████████████████████████████████████████████ ██████████████████████████████████████████ Oei Depo., **Ex. 63**, at 105:2-107:2.

Moreover, the spreadsheet demonstrates that the amount of labor depreciation is ██████████████████████████████████████████████ ████████████████ Bloem Depo. at 25:8-25:10.



Bloem Depo. at 27:9-28:8; *see also*, **Ex. 66**, Declaration of Saul Solomon, Plaintiffs' retained expert, at ¶ 11.

Additionally, by comparing the ACV amount reflected in an Xactimate or Symbility estimate to the payment data readily accessible through the company's claim files, Foremost can readily determine ████████████████████████████████████████ ██████████████████████████████████████████████

██████████████████████████████████████████

██████     By way of example, Foremost's Corporate Representative ████████████

██████████████████████ (**Ex. 19**) ████████████████████████████

██████████████     set forth on **Ex. 7** (estimate) and **Ex. 8** (payment information).   Cheesman

Depo. at 79:9-80:5.   Plaintiffs' expert has confirmed that such information can be calculated

based on available documentation.  **Ex. 66** at ¶ 10-11 (Mr. Solomon also provides alternative

methods for establishing the amount of labor depreciation at ¶ 12-16).

## III.   PLAINTIFFS' CLAIMS

Plaintiffs assert claims against Foremost for breach of contract and unjust enrichment

arising out of Foremost's improper labor depreciation practices. *See* **Ex. 1**, Complaint ¶¶ 41-59.

Plaintiffs contend that Foremost's wrongful depreciation of labor costs constitutes a material

breach of its duty to indemnify them, and resulted in Plaintiffs being underpaid for their covered

loss.  *Id.* ¶¶ 6-26.  Plaintiffs allege that all Arkansas insureds who received an ACV payment

from Foremost during the Class Period were harmed in a similar fashion by Foremost's unlawful

conduct, as all such individuals received ACV payments that left them under-compensated and

under-indemnified for their covered losses.

In addition to seeking recovery of all wrongfully-depreciated labor costs, Plaintiffs also

seek to recover the 12% penalty provided for by Section 23-79-208 of the Arkansas Code on

behalf of themselves and the Class.  Specifically, Section 23-79-208 states that where an

insurance company fails to pay a covered loss "within the time specified by the policy after

demand is made," it "shall be liable to pay the holder of the policy or his or her assigns, in

addition to the amount of the loss, twelve percent (12%) damages upon the amount of the loss,

together with all reasonable attorney's fees for the prosecution and collection of the loss."

19

Plaintiffs contend that the 12% penalty applies to *all* labor depreciation withheld from class members' ACV payments, regardless of whether a portion of the withheld depreciation was ultimately recovered by class members through a partial RCV payment, because under the insurance policies, the wrongfully withheld labor depreciation costs should have been paid **upfront** (*i.e.*, at the time of loss). Therefore, these payments were not made "within the time specified by the policy after demand is made." Ark. Code § 23-79-208; *see also Silvey Cos. v. Riley*, 318 Ark. 788, 790, 888 S.W.2d 636, 637 (1994) ("Our construction of [Section 23-79-208] is straightforward: 'Where an insured loss occurs and an insurance company fails to pay the loss within the time specified by the policy, then the insurance company is required to pay, in addition to the loss, a 12% penalty plus reasonable attorneys fees.'") (quoting *Miller's Mut. Ins. Co. v. Smith Co.*, 284 Ark. 124, 126, 680 S.W.2d 102, 103 (1984)).

## IV.    THE PROPOSED CLASS DEFINITION

Through the instant motion, Plaintiffs now seek certification of the following class of individuals who are seeking monetary damages from Foremost (the "Class"):

> All persons and entities that received "actual cash value" payments, directly or indirectly, from Foremost for loss or damage to a dwelling or other structure located in the State of Arkansas, such payments arising from events that occurred within the ten years preceding the date of filing of this Class Action Complaint, where the cost of labor was depreciated. Excluded from the Class are: (1) all persons and entities that received a full replacement cost payment from Foremost; (2) all persons and entities that received payment from Foremost in the full amount of insurance shown on the declarations page; (3) Foremost and its affiliates, officers and directors; (4) members of the judiciary and their staff to whom this action is assigned; and (5) Plaintiffs' counsel.

**Ex. 1**, Complaint, ¶ 28.

## V.      ARGUMENT

### A.      Legal Standards

To be certified under Rule 23, a putative class must satisfy, by a preponderance of the evidence, each of the four requirements of Rule 23(a):  numerosity, commonality, typicality and adequacy.  *See* Fed. R. Civ. P. 23.  In addition, a putative class must satisfy the requirements of one of the three provisions of Rule 23(b).  *Id.*  Here, Plaintiffs seek certification of the Class under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  In addition to the express requirements of Rule 23, courts in this Circuit have recognized two implicit factors that must be satisfied for a class to be certified:  (i) the class definition "must be drafted in such a way to ensure that membership is ascertainable by some objective standard"; and (ii) "the class representatives must be members of the proposed class."  *Walls v. Sagamore Ins. Co.*, 274 F.R.D. 243, 250-51 (W.D. Ark. 2011) (Barnes, J.).

Courts should refrain from "engag[ing] in free-ranging merits inquiries at the certification stage."  *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013).  This Court has stated that "[i]n determining whether to certify a class action, 'the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.'"  *Ginardi v. Frontier Gas Servs., LLC*, No. 4:11-cv-00420-BRW, 2012 WL 1377052, at *2 (E.D. Ark. Apr. 19, 2012) (Wilson, J.) (*quoting Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)).

**B.      Membership In The Class Is Ascertainable**

"A recognized prerequisite to the class certification inquiry involves the court's assessment of the ascertainability of the class." *Eastwood v. Southern Farm Bureau Cas. Ins. Co.*, 291 F.R.D. 273, 278 (W.D. Ark. 2013) (Holmes, J.).  Ascertainability "is not designed to be a particularly stringent test." *Id.* (citation and internal quotation marks omitted).  It "simply means that the description of a proposed class must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Id.* (citation and internal quotation marks omitted); *see also Haney v. Recall Ctr.*, 282 F.R.D. 436, 439 (W.D. Ark. 2012) (Hickey, J.) ("The class definition must be drafted in such a way as to ensure that membership is ascertainable by some ***objective standard***.").  Moreover, "[c]lass certification should not be denied due to a mere possibility that, in the future, evidence may show that some class members do not meet the class definition and must be excluded." *Eastwood*, 291 F.R.D. at 284.  Rather, a class is ascertainable so long as a plaintiff is "able to establish that the ***general outlines*** of the membership of the class are determinable at the outset of the litigation." *Id.* at 278 (quoting *Bynum v. District of Columbia*, 214 F.R.D. 27, 31 (D.D.C. 2003)).

Here, the Class is defined through objective criteria that can easily be used to identify its members.  To be a Class member, one must have (i) received an "actual cash value" payment from Foremost under an RCV or ACV policy, (ii) for loss or damage to a dwelling or other structure located in Arkansas, (iii) occurring during the ten years preceding the filing of this action, (iv) where labor costs were depreciated.  Plaintiff has provided additional objective criteria to limit membership in the Class, specifically noting that the Class *excludes*: (i) persons who received the full replacement cost payment from Foremost; (ii) persons who received payment for the full amount of coverage listed on the declarations page (and thus would not have been entitled to recover additional funds from Foremost); (iii) Foremost and its affiliates,

officers, and directors; (iv) members of the judiciary and their staff to whom this action is assigned; and (v) Plaintiffs' counsel.

Through the application of these objective limitations, it will be "administratively feasible" for the Court to determine whether a particular individual is a member of the Class. *Eastwood*, 291 F.R.D. at 278.  Indeed, Foremost has admitted █████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████  *See* **Ex. 62** Cheesman Depo at 51:24-52:4, 52:16-20, 54:6-12; **Ex. 60**, Deposition of Michael Williams, Farmers Insurance Exchange employee, at 30:4-24, 42:9-43:20, 51:24-52:15; *see also* Section II(G), *supra*.  Ascertainability is thus confirmed, as membership in the Class can be "determine[d] objectively" by the records maintained by Foremost. *Walls*, 274 F.R.D. at 257-58 (ascertainability established where insurer "offered no reason as to why its lists of insureds could not be narrowed to include only those who actually paid the rewrite fee, and it appears those names could be easily ascertained from Defendant's business records."); *see also Lindquist v. Farmers Ins. Co.*, No. CV 06-597-TUC-FRZ, 2008 WL 343299, at *3 (D. Ariz. Feb. 6, 2008) (finding class ascertainable where "class members can be identified by objective criteria that are contained in the claim files maintained by Defendants").[5]

---

[5]   Importantly, such a review would not require an inquiry into the legal *merits* of each policyholder's claim.  Rather, the review would be limited to determining whether, as a matter of *fact*, the policyholder had labor-related depreciation deducted from his or her ACV payment and did not later receive the full RCV payment.  If so, the policyholder is a member of the Class and the merits of his or her claim which included labor costs will be adjudicated on a classwide basis.  If the policyholder received an upfront RCV payment or was otherwise not subject to a labor-related depreciation adjustment—facts that can be readily determined by reviewing a claimant's claim file and Symbility or Xactimate data—he or she would be excluded from the Class.  *See Lindquist*, 2008 WL 343299, at *3 (ascertainability established where "individualized inquiry

Moreover, because only those individuals who actually had labor costs depreciated and withheld from their ACV payment are members of the Class, "there is no risk that those who were not damaged by [Foremost's conduct] could be included in the [C]lass." *Walls*, 274 F.R.D. at 258 (citation and internal quotation marks omitted).  As discussed above, even policyholders who may have subsequently recovered some of the depreciation holdback as part of a later RCV payment (*i.e.*, *after* the initial ACV payment at the time of loss), are nonetheless members of the Class because they—like those policyholders who *never* received a depreciation holdback—are entitled to relief from Foremost under the 12% penalty provision of the Arkansas Code for claims not paid "within the time specified by the policy after demand is made."  Ark. Code § 23-79-208.  *See* Section III, *supra*.  Stated simply, *no member* of the Class received his or her full labor costs from Foremost "within the time specified by the policy," *i.e.*, at the time of loss, as *all* Class members—even those who subsequently received a portion of the depreciation holdback—necessarily had labor depreciation withheld from their initial ACV payments in breach of the policy.

Finally, the Proposed Class Representatives are plainly members of the Class.  *See Walls*, 274 F.R.D. at 250-51 (a class representative must establish that he or she is a member of the proposed class).  As discussed herein, the Keller Plaintiffs and Plaintiff Byrge: (i) received an "actual cash value" payment from Foremost under an RCV or ACV policy, (ii) for loss or damage to a dwelling or other structure located in Arkansas, (iii) occurring during the ten years preceding the filing of this action, (iv) where labor costs were depreciated. Indeed, the Proposed Class Representatives' claims arose during the time period in which ████████████

---

into the merits of every potential class member is not required to determine who is a proper member of the class definition"; "If a purported class member meets these objective criteria, they would be included in the class; if one did not meet these objective criteria, they would not be included in the class.").

██████████████████████████████████████   *See* Sections II(C) and (F), *supra*.   Moreover, neither the Kellers nor Ms. Byrge (i) received the full replacement cost payment from Foremost; (ii) received payment from Foremost in the full amount of the coverage shown on the declarations page of his policy; (iii) is an officer, director or affiliate of Foremost; (iv) is a member of the judiciary to whom this case is assigned; or (v) is serving as Class Counsel in this case.

### C. The Class Satisfies The Requirements Of Rule 23(a)

#### 1. Numerosity Is Established

The numerosity requirement of Rule 23(a)(1) requires a plaintiff to demonstrate that the class is so numerous that joinder of all members is impracticable.  The Eighth Circuit considers a number of factors in assessing numerosity, "the most obvious of which is the number of persons in the proposed class."  *Paxton v. Union Nat. Bank*, 688 F.2d 552, 559 (8th Cir. 1982).  Here, Foremost *concedes* numerosity.  Foremost removed this action to federal court on the basis of a representation that the putative class exceeds 100 members.  *See* Notice of Removal (Dkt. No. 1) at ¶11 ("[T]he requirement that the number of members of the putative class exceed 100 has been easily met.").  Foremost also represented that it had identified ████████████████████████ ██████████████████████ and conceded that "Defendants *admit*, however, that as defined, Plaintiffs' proposed class would meet the numerosity requirement of Rule 23."  *See* Notice of Removal (Dkt. No. 1) at ¶11; **Ex. 65** (Foremost's Responses to Plaintiff's First Set of Requests for Admission) at 3; *see also* Bloem Depo. at 41:16-19 ████████████████████████ ███████████████████████████.  Numerosity is therefore established.

#### 2. Commonality Is Established

Rule 23(a)(2) requires the proponent of class certification to show that "there are questions of law or fact common to the class," and that a class action will "generate common

answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550-51 (2011); *see also DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (commonality "may be satisfied when the legal question linking the class members is substantially related to the resolution of the litigation"). Commonality "does not require that every question of law or fact be common to every class member." *Robinson v. Sears, Roebuck and Co.*, 111 F. Supp. 2d 1101, 1120 (E.D. Ark. 2000) (Wright, J.) (collecting cases). Rather, Rule 23 requires only that class members share at least one common question of law or fact. *Paxton*, 688 F.2d at 561; *see also Dukes*, 131 S. Ct. at 2556 ("[F]or purposes of Rule 23(a)(2), '[e]ven a single [common] question' will do.") (citation omitted). Moreover, "factual differences are not fatal to maintenance of the class action if common questions of law exist." *Robinson*, 111 F. Supp. 2d at 1120.

Because Rule 23(a)(2) requires only a single common issue of law or fact among class members, commonality "is easily met in most cases." *Id.* (citation omitted); *see also Walls*, 274 F.3d at 254 (referring to "the low threshold requirement of commonality"). In particular, where "all class members [are] subjected to the same alleged wrongful conduct by Defendant," commonality is readily established. *Walls*, 274 F.R.D. at 254. This is particularly true where classwide claims are premised upon allegations that a defendant's common practice breached the terms of a form contract. *See id.* (class certified where "proposed class members were subjected to Defendant's uniform practice of sending a notice of cancellation before the time for making a premium payment had expired and, thereafter, had their insurance improperly cancelled"); *Ewert v. eBay, Inc.*, 2010 WL 4269259, at *7 (N.D. Cal. 2010) (plaintiffs' breach of contract claim based on a three-page form contract requiring application of a single state's law presents the "classic case for treatment as a class action.").

Here, all Class members' claims flow from Foremost's common practice of depreciating labor costs prior to issuing ACV payments to Arkansas insureds.  As established above,



Oei Depo., **Ex. 63**, at 177:15-178:20; *see also* **Ex. 24**, ████████████████████ ████████  Frmst_Keller031243 ████████████████████████ ████████████████████████████████████████ ; *see also* Cheesman Depo., **Ex. 62**, at 51:24-52:4; 52:16-20; 54:6-12; and Sections II(C) and (F), *supra*.

Through Xactimate and Symbility, Foremost calculated labor depreciation in a common, automated way for Class members.[6]  *See* Sections II(C), (F) and (G), *supra* ████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████

---

[6] For example, ████████████████████████████████████ *See* Oei Depo., **Ex. 63**, at 156:14-157:24. ████████████████████████████████████████ ████████ *Id.* at 157:25-159:4. ████████████████ ████████████████████████████████████████



**Ex. 44**, Xactimate28—Setting Preferences, Frmst_Keller005509.   Foremost's practice, enabled

by the estimating software, was reinforced with training:



Oei Depo., **Ex. 63**, at 181:18-24 (objection omitted). ████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████ *Id.* at 171:12-172:21.

Questions of law common to all Class members plainly exist as a result of Foremost's

common practice of labor depreciation, as Class members' claims will rise or fall collectively

based on a determination of:

1) Whether Foremost's insurance policies allow Foremost to depreciate labor
in calculating ACV payments for covered losses;

2) Whether Foremost's labor depreciation practices constitute a breach of its
homeowner's policies;

3) Whether an insurer may calculate actual cash value by depreciating not
only materials, but also labor, when the policy defines "actual cash value"
to include "depreciation," and defines "depreciation" to include
depreciation of labor;[7] and

---

[7] This question is being briefed before the Arkansas Supreme Court in *Shelter Mutual Ins. Co., v. Goodner, et al.*, No. CV-15-111 (the "Shelter Appeal").   Shelter Mutual authored a policy form that purports to allow labor depreciation by defining "actual cash value" to include depreciation

4) Whether such practices trigger the 12% penalty provided for by Section 23-79-208 of the Arkansas Code for failure to pay a covered loss "within the time specified by the policy...." Ark. Code § 23-79-208.

These common questions go to the very heart of the claims alleged on behalf of Class members. Plainly, a class action will generate common answers to these questions that ultimately drive the resolution of this litigation. *Dukes*, 131 S. Ct. at 2551. Commonality is therefore satisfied.

That some members of the Class, unlike the Proposed Class Representatives, may have recovered a portion of their wrongfully-depreciated labor costs in a later RCV payment—*i.e.*, *after* the initial ACV payment at the time of loss—does not defeat commonality. As discussed above, *no member* of the Class received their full labor costs from Foremost in a timely fashion under the terms of the policy (*i.e.*, at the time of loss), as Class members necessarily had labor depreciation withheld from their initial ACV payments. Accordingly, ***all*** members of the Class have a claim to the 12% penalty authorized by Section 23-79-208 of the Arkansas Code for claims not paid "within the time specified by the policy after demand is made." Ark. Code § 23-79-208. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 416 (2010) (authorizing certification of penalty class of insurance policyholders seeking penalty for non-payment under New York insurance statute). That some class members may be entitled to lesser damages because they subsequently received a portion of the depreciation holdback is not a barrier to certification. *See Perrin v. Papa John's Int'l, Inc.*, No. 4:09CV01335 AGF, 2013 WL

---

of labor. Foremost moved the Arkansas Supreme Court for permission to file an amicus curiae brief, admitting "[the Arkansas Supreme Court's] decision could directly affect Foremost in [a] pending federal district court suit." **Ex. 71**, *Foremost Insurance Company Grand Rapids, Michigan's Motion for Leave to File Amicus Curiae Brief*, Case No. CV-15-111, at 3. Foremost's request was denied on April 16, 2015. The Shelter Appeal presents a common question of law as to those class members and should provide a common answer to class members, like the Kellers, who suffered losses under policies purporting to define "actual cash value" to include labor depreciation.

6885334, at *5 (E.D. Mo. Dec. 31, 2013) ("Here the Court believes that the commonality requirement is met, despite the fact that there will be a need for individualized calculation of damages.  The issues facing the class arise from common questions involving Defendants' policies regarding the calculation and payment of reimbursement for delivery expenses.  This is sufficient to satisfy the commonality requirement.").

### 3.    Typicality Is Established

Rule 23(a)(3) requires the Proposed Class Representatives to demonstrate that their claims and defenses "are typical of the claims and defenses of the class."  The Eighth Circuit has construed typicality to require a showing that "other members of the class . . . have the same or similar grievances as the plaintiff."[8]  *Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269, 1275 (8th Cir. 1990).  Factual differences between the Proposed Class Representatives' individual claims and Class claims "will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory."  *Alpern v. UtiliCorp United*, 84 F.3d 1525, 1540 (8th Cir. 1996).  Thus, typicality is "fairly easily met so long as other class members have claims similar to the named plaintiff."  *Id.*

Here, the Proposed Class Representatives' claims and the Class's claims arise out of the same course of conduct:  Foremost's systematic practice of depreciating labor costs in Arkansas.  Like all other members of the Class, the Proposed Class Representatives had labor costs depreciated and withheld from the ACV payments they received from Foremost under homeowner's policies covering property in Arkansas.  *See* Section II(E), *supra*.  Additionally, the claims asserted by the Proposed Class Representatives are based upon the same legal theories as the Class's claims.  The Proposed Class Representatives contend that they and every other

---

[8]  "The typicality requirement as customarily applied tends to merge with 'commonality.'"  *Paxton*, 688 F.2d at 562 (citing *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982)).

member of the Class are entitled to damages which are comprised of any unrecovered labor depreciation and the 12% statutory penalty imposed by Section 23-79-208 of the Arkansas Code. Complaint at 13. Because the Proposed Class Representatives' claims "arise from the same . . . course of conduct, and give rise to the same legal theory" as the Class's claims, "typicality is established." *Walls*, 274 F.R.D. at 254; *Nelson v. Wal-Mart Stores, Inc.*, 245 F.R.D. 358, 371 (E.D. Ark. 2001) (Wilson, J.).

Moreover, defenses that may be asserted against either Plaintiffs William and Debra Keller or Plaintiff Byrge are typical of defenses that may be asserted by the Class. However, these defenses—whether policy language purporting to allow labor depreciation or statute of limitations—support, rather than preclude, class certification.

In regard to the Kellers, Plaintiffs anticipate that the Defendant will assert that the language that defines ACV in the Keller policy form makes the Keller's claim atypical. *Cf.*:

> Keller definition: **Actual cash value** means the amount it would cost to repair or replace insured property with materials available today of like kind and quality, less adjustment for physical deterioration and depreciation, including obsolescence. Our adjustment for physical deterioration, depreciation and obsolescence applies to all costs including the cost of labor and material.

*with*

> Byrge definition: **Actual cash value** means the cost to repair or replace property with new materials of like kind and quality, less allowance for physical deterioration and depreciation, including obsolescence.

The Byrge definition tracks the specific language at issue in *Cameron*. The current Shelter Appeal (*see* fn. 7, *supra*) will likely resolve whether Foremost is permitted to depreciate labor by adding an addition contractual provision ("Our adjustment for physical deterioration, depreciation and obsolescence applies to all costs including the cost of labor") in Arkansas. Thus, in addition to Plaintiffs William and Debra Keller asserting labor depreciation claims

31

typical of the class in general, the Kellers' claims are also typical of the class members with the same policy language.  Depending on the resolution of the Shelter Appeal, the Kellers assert claims typical of the class in general, and alternatively, assert claims of a portion of class members who should have their claims resolved upon conclusion of the Shelter Appeal.  Under either approach, the requirements of Rule 23 are met.

Second, the fact that certain members of the Class fall outside of the applicable statute of limitations, and thus require proof of fraudulent concealment in order to recover from Foremost, does not create a typicality issue.  This is because the Plaintiff Byrge's claims also fall outside of the asserted limitations period.[9]   Thus, her claims are typical of the claims of those Class members who also have claims that will rise or fall collectively based upon proof of fraudulent concealment.   Foremost's effort to conceal labor depreciation is evidenced by Foremost's configuration of its estimating software:



Oei Depo., **Ex. 63**, 138:11-18.  Given Foremost's standardized and furtive conduct, Plaintiff Byrge asserts claims typical of the class in general, and alternatively, Plaintiff Byrge asserts

---

[9] The assertion of the affirmative defense of statute of limitations does not bar class certification. *See McDonough v. Toys R Us, Inc.*, 638 F. Supp. 2d 461, 476 (E.D. Pa. 2009) (In granting class certification, the Court rejected defendants' typicality argument that the statute of limitations precluded class certification, noting "[t]here is no reason to believe that any of the named plaintiffs will be distracted by [this] relatively unique personal defense."); *see also  In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 212 (E.D. Pa. 2001) aff'd, 305 F.3d 145 (3d Cir. 2002) (granting class certification over statute of limitations defense); *In re ML-Lee Acquisition Fund II, L.P. & ML-Lee Acquisition Fund (Ret. Accounts) II, L.P. Sec. Litig.*, 848 F. Supp. 527, 559 (D. Del. 1994) (plaintiffs' claims not atypical as other class members may be subject to statute of limitations defense).

claims typical of a portion of the class who would benefit from adjudication of the common elements of proof in fraudulent concealment.

As with litigation in general, developments in this and other cases may have application on the claims asserted by the Plaintiffs on behalf of the class. For this reason, class certification is a modifiable order, which "may be altered or amended before final judgment." FED. R. CIV. P. 23(c)(1)(C); *see also*, *In re Select Comfort Corp. Sec. Litig.*, 202 F.R.D. 598, 604 (D. Minn. 2001) ("[T]he district court has 'broad authority to define and redefine the class until judgment.'"). Therefore, the above contingencies should be resolved in favor of certification, as this Court may later redefine the class, if necessary, to conform with the evidence of a more fully-developed record.

### 4.    Adequacy Is Established

Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 608 n.13 (1997). As this Court has noted, the adequacy requirement tends to merge with the commonality and typicality requirements "because its purpose is to determine whether in a particular case 'maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Nelson*, 245 F.R.D. at 371 (quoting *Falcon*, 457 U.S. at 157 n.13 (1982)).

Here, the Proposed Class Representatives' interests are fully aligned with those of the Class, as their claims arise out of the same common course of conduct and are based upon the same legal theories as Class members' claims. *See* Sections II(E) and (III), *supra*.[10] The

---

[10] Byrge's interests are entirely aligned with those class members who must prove fraudulent concealment in order to recover from Foremost, as her claims have been asserted by Foremost to

Proposed Class Representatives take seriously their duties as class representatives: They have remained engaged in the litigation, cooperated with and assisted their attorneys, and have received no special benefit for acting as class representatives.  **Exs. 67-69**, ¶¶ 8-10.

In addition, Plaintiff has retained the services of highly-qualified Class Counsel, which will vigorously prosecute the interests of the Class.  As reflected in their attached firm profiles, Class Counsel has a wealth of experience in prosecuting class actions, and collectively have handled numerous class actions against insurance companies like Foremost.  *See* **Ex. 70**. Accordingly, adequacy is satisfied.

### D.    The Class Satisfies The Requirements Of Rule 23(b)(3)

#### 1.    Common Issues Predominate

The predominance inquiry "requires an analysis of whether a prima facie showing of liability can be proved by common evidence or whether this showing varies from member to member." *Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013) (citing *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010)).  Predominance only "requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class," *Amgen,* 133 S. Ct. at 1191, or "that all issues be common to the class."  *Eastwood*, 291 F.R.D. at 286 (quoting *Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 31 (1st Cir. 2003)).

Here, common issues plainly predominate, as the essential elements of the Class's causes of action can be established through common proof.  For instance, in order to make a *prima facie*

---

fall outside of the applicable statute of limitations.  Thus, appointing Byrge and the Kellers as Class Representatives will ensure that no intra-class conflicts arise from the fact that certain other Class members must prove the Complaint's allegations of fraudulent concealment.  In any event, this Court has previously recognized that it is empowered to create subclasses for practical purposes.  *See Nelson*, 245 F.R.D. at 372 n. 112.  Thus, subclasses are an option this Court could elect if it perceives any type of intra-class conflict.

showing of liability, the Class will need to establish that Foremost's common practice of depreciating labor costs constituted a material breach of its homeowner's policies.  As discussed above, pending final resolution of the Shelter Appeal, the relevant provisions of Foremost's homeowner's policies are virtually identical in all material respects and were handled on a consistent basis by Foremost regardless of the policy form.  *See* Sections II(B), (C), (E), and (F), *supra*. ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████ (**Ex. 24**, at Frmst_Keller031243) and the testimony of Farmers employees confirming that Foremost's ███████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████ *See* Oei Depo.,

**Ex. 63**, at 177:11-178:20; *see also* Sections II(B), (C), (D), (E), and (F), *supra*.

Because "the same evidence will suffice for each member to make a *prima facie* showing" of liability, common issues predominate.  *Ginardi*, 2012 WL 1377052, at *4.  Indeed, in *Farmers Union Mut. Ins. Co. v. Robertson*, the Supreme Court of Arkansas affirmed the certification of a class almost identical to the putative class here: a class of Arkansas insureds seeking breach of contract damages for wrongful labor depreciation on their ACV payments. *See* 2010 Ark. 241, at *11-14, 370 S.W.3d 179, 186-88 (2010) ("The requirement that common issues predominate is [] satisfied" because "whether Appellant was able to depreciate labor pursuant to the contractual terms of its policies would be the same and require the same proof").

Plaintiffs' ability to calculate damages on a classwide basis also supports predominance. In *Comcast Corporation v. Behrend*, the Supreme Court held that, at class certification, a

plaintiff's method for calculating damages must be consistent with his or her theory of liability by "measur[ing] only those damages attributable to that theory." Thus, "so long as the damages can be determined and attributed to a plaintiff's theory of liability, damage calculations for individual class members do not defeat certification." *Lindell v. Synthes USA*, 2014 WL 841738, at *14 (E.D. Cal. Mar. 4, 2014); *see also Sykes v. Mel S. Harris & Assocs., LLC*, 2015 U.S. App. LEXIS 2057, *40 (2d Cir. Feb. 10, 2015) ("All that is required at class certification is that 'the plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the liability.'") (quoting *Leyva v. Medline Industries Inc*., 716 F.3d 510, 514 (9th Cir. 2013)).

The *Comcast* Court also held that individualized damages issues do not predominate where a plaintiff can establish "that damages are capable of measurement on a classwide basis." 133 S. Ct. 1426, 1433 (2013).[11] In so holding, the *Comcast* Court did ***not*** alter the well-settled, "universal" principle that the need to perform individualized damage calculations will not

---

[11] Notably, however, *Comcast **does not "require*** a finding that damages are capable of measurement on a classwide basis" in order certify a class. *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 402, 407 (2d Cir. Feb. 10, 2015) ("*Comcast* . . . did *not* hold that a class cannot be certified under Rule 23(b)(3) simply because damages cannot be measured on a classwide basis. *Comcast*'s holding was narrower[:]…a model for determining classwide damages relied upon to certify a class under Rule 23(b)(3) must actually measure damages that result from the class's asserted theory of injury; but the Court did not hold that proponents of class certification must rely upon a classwide damages model to demonstrate predominance…."); *see also In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1257-58 (10th Cir. 2014) ("*Comcast* did not rest on the ability to measure damages on a class-wide basis."); *In re Nexium Antitrust Litig.*, No. 14-1 1521, 2015 WL 265548, at *8, *10 (1st Cir. Jan. 21, 2015) (explaining that *Comcast* 'simply' requires that a damages calculation reflect the associated theory of liability, and discussing the 'well-established' principle that individualized damages do not automatically defeat Rule 23(b)(3) certification); *In re Glazer v. Whirlpool Corp. (In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.)*, 722 F.3d 838, 860-61 (6th Cir. 2013) (after *Comcast* "it remains the 'black letter rule' that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members.").

[12] *See, e.g., Arloe Designs, LLC v. Arkansas Cap. Corp.*, 2014 Ark. 21, at *7 (Jan. 23, 2014) ("In general, damages recoverable for breach of contract are those damages that would place the injured party in the same position as if the contract had not been breached.").

preclude class certification under Rule 23(b)(3).  *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 861 (6th Cir. 2013) ("Because '[r]ecognition that individual damages calculations do not preclude class certification under Rule 23(b)(3) is **well nigh universal**,'" even after *Comcast* "'it remains the "black letter rule" that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members.'") (citation omitted); *see also Day v. Celadon Trucking Servs.*, 2014 U.S. Dist. LEXIS 81496, at *36 (E.D. Ark. Jun. 16, 2014) (Wright, J.) (finding predominance requirement satisfied even though "damages will not be identical for each class member"); *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1168 (9th Cir. 2014)  ("So long as the plaintiffs were harmed by the same conduct, disparities in how or by how much they were harmed d[o] not defeat class certification."); *Leyva*, 716 F.3d at 514   ("the presence of individualized damages **cannot, by itself,** defeat class certification under Rule 23(b)(3)"); *Bussey v. Macon Cty. Greyhound Park, Inc.*, 2014 WL 1302658, at *7 (11th Cir. Apr. 2, 2014) (restating, after *Comcast*, that "the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate"); *In re Deepwater Horizon*, 739 F.3d 790, 815 (5th Cir. 2014) (holding that, even after *Comcast*, "wide disparity among class members as to the amount of damages does not preclude class certification and courts therefore have certified classes even in light of the need for individualized calculations of damages") (citation and internal quotation marks omitted); *Butler v. Sears, Roebuck and Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("It would drive a stake through the heart of the class action device . . . to require that every member of the class have identical damages.").

Damages in this matter are readily susceptible to a classwide approach.  In breach of contract cases, damages are routinely measured by the difference in value between what the non-

breaching party received and what the non-breaching party would have received had the contract not been breached.[12]   Here, each Class member's damages can be measured by the amount of labor depreciation that each insured had withheld from his or her ACV payment in breach of the policy terms (less any labor-related depreciation recovered through a later RCV payment), plus the 12% penalty provided for by Section 23-79-208 of the Arkansas Code.   Thus, as explained by Plaintiff's damages expert Saul Solomon, each Class member's damages can be calculated using the following formula:

**DAMAGES = (WITHHELD LABOR DEPRECIATION – RECOVERED LABOR DEPRECIATION) + (12% * WITHHELD LABOR DEPRECIATION)**

*See* **Ex. 66** at ¶ 5.[13]

This damages methodology, which isolates the amount of unrecovered labor depreciation wrongfully withheld from each Class member (together with the applicable 12% penalty), is wholly consistent with Plaintiff's theory of liability, *i.e.*, that Foremost breached the terms of its insurance policies by wrongfully withholding labor depreciation from its payments to Class members.   Moreover, all of the data needed to calculate damages using this formula is

---

[13] This formula for calculating damages is entirely consistent with the analysis provided by Foremost in its Notice of Removal.   Indeed, to determine the amount of compensatory damages sought in the action, Foremost undertook to determine the amount of depreciated labor costs by querying the estimating software programs used by Foremost during the alleged class period. ECF 1, ¶ 19.   This estimating software calculates ACV by "subtracting the amount of depreciation" from the amount of the replacement cost estimate.   *Id.*   The software is then able to isolate the cost of labor from the total depreciation in the estimate.   *Id.*; *see also* ECF 1-2 , ¶ 7 (estimating that total amount of labor depreciation in ACV estimates during that class period is $3,956,175).   Foremost undertook a manual review of a statistical sampling of claim files, which "verif[ied] the accuracy and reliability of the labor depreciation amounts contained in the estimating platform databases."   ECF 1-2, ¶ 8.   Foremost then multiplied this figure by 12% to determine the amount of statutory penalties provided under Section 23-79-208 of the Arkansas Code, and added this figure to the total amount of compensatory damages.   *See* ECF 1*,* at ¶ 23 ("[A] 12% penalty would result in an additional award to Plaintiffs of $474,741.00.").   This is **exactly** the damages methodology reflected in the formula advocated by Plaintiffs' damages expert.

maintained by Foremost or within its possession, custody or control. ███████████████████

██████████████████████████████████████████████████████████

Bloem Depo., **Ex. 61**, 23:9-17; 24:18-25:7; 27:24-28:8. ████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████



Oei Depo., **Ex. 63**, at 138:1-10; *see also* Bloem Depo., **Ex. 61**, at 23:9-16; **Ex. 16**, ¶ 6; **Ex. 15**, ¶

7 ████████████████████████████████████████████████████████

█████████████████████████[14]; Williams Depo., **Ex. 60**, at 80:2-85:17 ████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████ Thus, Foremost is able to ascertain damages with documents in

its possession without the need to obtain testimony from individual class members.

Because Plaintiff has provided a "truly classwide *approach* to calculating damages,"

individualized issues concerning damages will not predominate over issues common to the Class.

*In re BP p.l.c. Sec. Litig.*, 2014 WL 2112823, *6 (S.D. Tex. May 20, 2014).

---

[14] Foremost has undertaken a ████████████████████████████████████████████

██████████████████████████████████████████████████████████

███     *See* Bloem Depo., **Ex. 61**, at 36:10-41:9

### 2.      Superiority Is Established

Rule 23(b)(3) also requires a plaintiff to show that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy."  Rule 23(b)(3) goes on to state that "[t]he matters pertinent to these findings include" the following:

 (1)  Class members' interests in individually controlling their separate actions;

 (2)  The extent and nature of existing litigation by class members concerning the same claims;

 (3)  The desirability of concentrating the litigation in the particular forum; and

 (4)  The likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); *see also Eastwood*, 291 F.R.D. at 296.  Here, each factor weighs in favor of certifying the Class.

*First*, other class members' interests in controlling their individual claims appear to be minimal given the fact that Plaintiffs are the only Class members that have expressed an interest in asserting the claims at issue in this action against Foremost. *See Eastwood*, 291 F.R.D. at 296 (class members' interest minimal given lack of other litigation involving same claims); *Torres v. Gristede's Operating Corp.*, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (same). Indeed, a review of the PACER Case Locator reveals no other litigation, much less class litigation, pending against Foremost in the Eastern or Western Districts of Arkansas for depreciation of labor in payments made by Foremost.

*Second*, as previously mentioned, the lack of any individual actions asserting the same claims against Foremost independently supports a finding of superiority.

*Third,* because the Class is limited to persons who suffered covered losses to property located in the state of Arkansas, this Court is an appropriate forum for this litigation.  Moreover, given the risk that multiple individual lawsuits against Foremost will (i) lead to disparate results;

(ii) increase the cost of litigation for Foremost and Class members, (iii) unnecessarily waste judicial resources; and (iv) leave certain Class members with small individual damages without a cost-effective method to seek redress for the harm caused by Foremost's breach of thousands of homeowner's insurance policies, it is desirable to resolve the Class's claims on a classwide basis. Indeed, in *Farmers Union*, the Arkansas Supreme Court recognized that requiring each plaintiff to assert his or her labor depreciation claim individually would "entail needless and expensive duplication, waste the resources of both the parties and the Court, and risk inconsistent adjudications."   2010 Ark. at 15, 370 S.W. 3d at 188.   The court further stated that "[t]he unnecessary burden of filing thousands of individual administrative complaints [with the Arkansas Department of Insurance] to resolve *a single precise and common issue on contract interpretation is illogical.*"  *Id.*

*Finally*, Plaintiff does not foresee any difficulties in managing this action as a class action.  Rather, given that most, if not all, of the critical legal and factual issues in this matter are common to all Class members, resolving the Class's claims on a classwide basis will reduce litigation costs for all parties and promote judicial economy.  *See id.* (finding class action to be manageable where "only Arkansas law applies," "every class member is seeking to enforce the same Arkansas statutes," and "[i]ssues common to the class predominate over those affecting only individual members").

A class action is therefore the superior method of adjudicating the Class's claims.

## VI.    CONCLUSION

For the above-stated reasons, Plaintiff respectfully requests that the Court: (i) certify the Class; (ii) appoint the Proposed Class Representatives as representatives of the Class; and (iii) appoint Proposed Class Counsel as counsel for the Class.

41

Dated:  April 23, 2015                    Respectfully submitted,

> Matt Mustokoff
> Richard A. Russo, Jr.
> **KESSLER TOPAZ MELTZER & CHECK, LLP**
> 280 King of Prussia Road
> Radnor, PA 19087
> Telephone:  610.667.7706
> Facsimile:  610.667.7056
>
> John C. Goodson
> Arkansas Bar Number 90018
> Matt Keil
> Arkansas Bar Number 86099
> **KEIL & GOODSON P.A.**
> 406 Walnut Street
> Texarkana, AR 71854
> Telephone: 870.772.4113
> Facsimile: 870.773.2967
>
> Jason E. Roselius
> Arkansas Bar Number 2009014
> Oklahoma Bar Number 16721
> Jack Mattingly Jr.
> Tanner W. Hicks
> **MATTINGLY & ROSELIUS, PLLC**
> 13182 N. MacArthur Blvd.
> Oklahoma City, OK 73142
> Telephone:  405.603.2222
> Facsimile:  405.603.2250
>
> Tom Thompson
> Arkansas Bar number 77133
> Casey Castleberry
> Arkansas Bar Number 2003109
> **MURPHY, THOMPSON, ARNOLD,**
> **SKINNER & CASTLEBERRY**
> 555 East Main Street, Suite 200
> Post Office Box 2595
> Batesville, AR 72503-2595
> Telephone:  870.793.3821
> Facsimile:  870. 793.3815

42

Stephen Engstrom
Arkansas Bar Number 74047
**STEPHEN ENGSTROM LAW OFFICE**
200 River Market Avenue, Suite 600
Post Office Box 71
Little Rock, AR 72203
Telephone:  501.375.6453
Facsimile:  501.375.5914

George L. McWilliams
Arkansas Bar Number 68078
**LAW OFFICE OF GEORGE L. MCWILLIAMS, P.C.**
406 Walnut Street
Texarkana, AR 71854
Telephone:  870.772.2055
Facsimile:  870.773.2967

Richard E. Norman
By:  */s/ R. Martin Weber, Jr.*
R. Martin Weber, Jr.
**CROWLEY NORMAN LLP**
Three Riverway, Ste. 1775
Houston, TX  77056
Telephone:  713.651.1771
Facsimile:  713.651.1775

W.H. Taylor
Arkansas Bar Number 81154
Stevan Vowell
Arkansas Bar Number 75134
William B. Putman
Arkansas Bar Number 91198
**TAYLOR LAW PARTNERS**
303 E. Millsap Road
P.O. Box 8310
Fayetteville, AR 72703
Telephone:   479.443.5222
Facsimile: 479.443.7842

James M. Pratt, Jr.
**JAMES M. PRATT, JR., P.A.**
144 Washington NW
Post Office Box 938
Camden, AR 71701
Telephone:   870.836.7328
Facsimile:   870.837.2405

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system.  As such, this pleading was served on all counsel who are deemed to have consented to electronic service.  All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by regular mail on April 23, 2015.

<em><u>R. Martin Weber, Jr.</u></em><br>R. Martin Weber, Jr.